IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Y VIET DANG, | : | CIVIL ACTION NO. **1:CV-10-0446** |
| | : | |
| Petitioner | : | (Judge Rambo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| CRAIG LOWE, et al., | : | |
| | : | |
| Respondents | : | |

## REPORT AND RECOMMENDATION

**I. Background.**

On March 1, 2010, Petitioner, Y Viet Dang, an inmate at the Pike County Correctional Facility ("PCCF"), Lord's Valley, Pennsylvania filed, through counsel, this 16-page Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1).[1] Petitioner is a detainee of the Bureau of Immigration and Customs Enforcement ("ICE"). Petitioner named as Respondents Craig Lowe, Warden at PCCF, Thomas Decker, Field Office Director of ICE, Philadelphia District, and Eric Holder, United States Attorney General of the Department of Justice. (Doc. 1).[2] Petitioner attached Exhibits to his Habeas Petition. (Doc. 1-3). Petitioner paid the required filing fee.

On March 3, 2010, we ordered service of Petitioner's Habeas Petition on Respondents, and directed Respondents to file their response to it. (Doc. 3).

---

[1]On March 3, 2010, Petitioner's Counsel, Attorney Wayne Sachs, filed a Petition for admission to the Middle District of Pennsylvania *pro hac vice,* which the Court granted on March 8, 2010. (Doc. 4).

[2]We note that Petitioner named the proper Respondent, the Warden at PCCF, since this Warden has custody of Petitioner. *See* 28 U.S.C. §§ 2242 and 2243.

After Respondents were served with the Habeas Petition, they filed their Response to it on March 23, 2010, with Exhibits. (Doc. 9). Also, on March 23, 2010, Petitioner filed his Traverse with an attached Exhibit, namely, a copy of our March 31, 2008 R&R we issued in *McDonald v. Decker*, Civil No. 08-0496, M.D. Pa. (Doc. 10).[3]

Upon request of Petitioner's counsel, we give expedited consideration to the instant Habeas Petition since Petitioner contends that he is a lawful permanent resident with a pending substantial challenge to his removal, which he avers will not be decided by a hearing with an Immigration Judge ("IJ") for six to twelve months. (Doc. 10, pp. 24-25). In particular, Petitioner states that he has a meritorious claim for relief of removal pending with the Immigration Court ("IC") *via* his application for adjustment of status under 8 U.S.C. §1255(a), INA §245(a), and his application for a waiver of his prior criminal conviction under 8 U.S.C. §1182(h), INA §212(h). (Doc. 10, pp. 24-25). The record indicates that Petitioner had a hearing before an IJ scheduled for April 5, 2010 with respect to his removal proceedings. (Doc. 9, Ex. 7). Neither party has supplemented the record as to what transpired at Petitioner's April 5, 2010 IJ hearing if it was in fact held on this date. In any event, the record is undisputed that Petitioner is not yet subject to a final order of removal.

Petitioner states that he is a long-term lawful permanent resident of the United States and that he has been unlawfully detained by ICE since February 9, 2010, under the mandatory detention

---

[3]Our R&R in *McDonald v. Decker* was directly on point with Petitioner Dang's case. The Court did not adopt our R&R in *McDonald v. Decker* since Petitioner McDonald's case became moot when he was released from ICE custody on April 29, 2008, after he was granted cancellation of removal by the Immigration Court. We also note that Petitioner McDonald was represented by the same counsel who represents Petitioner Dang.

provisions of INA § 236(c), 8 U.S.C. § 1226(c), without being afforded an individualized bond

hearing during the pendency of his removal proceedings before the Immigration Court. Petitioner

indicates that his IC proceedings will take at least nine to twelve months. Basically, Petitioner claims

that the mandatory detention provisions of INA § 236(c) do not apply to him "because ICE did not

detain him until almost **ten years** after his release from prison." (Doc. 1, p. 2 and Doc. 10, p.

2)(emphasis original). Petitioner contends that since ICE did not detain him upon his release from

incarceration, the mandatory detention provisions of INA §236 (c) do not apply to him. Petitioner

argues that "[w]hile the Board of Immigration Appeals ("BIA") has interpreted section 1226(c) [INA

§ 236(c)] to authorize mandatory detention no matter when ICE takes a non-citizen into custody,

*see Matter of Rojas*, 23 I&N Dec. 117 (2001), its approach ignores the statute's plain meaning,

violates longstanding canons of statutory construction, and distorts legislative history." (Doc. 10, p.

2). Plaintiff also claims that his continued detention (of almost three months) without an

individualized bond hearing violates procedural and substantive due process rights under the Fifth

Amendment.[4]

---

[4]On April 28, 2010, this Court was transferred another § 2241 habeas petition in which
Petitioner Gonzalez raises essentially the same claim as Petitioner Dang. *See Gonzalez v. DHS*,
Civil No. 10-0901, Middle District of Pennsylvania. In *Gonzalez,* Petitioner's counsel cites to
several cases which support our recommendation in Petitioner Dang's case. *See* Doc. 2-2, Civil
No. 10-0901. While Petitioner Gonzalez states that she was not taken into ICE custody until
about one year after her release from confinement, Petitioner Dang was not taken into ICE
custody for about nine years and nine months after his release from confinement.
Thus, since any decision by this Court in the *Dang* case may affect the Court's decision in
the *Gonzalez* case, the undersigned will not issue an R&R in the *Gonzalez* case until the Court
decides the *Dang* case.

Petitioner admits that he has not exhausted his administrative remedies since, at the time he filed his Habeas Petition, he did not yet have his hearing before the Immigration Judge regarding his applications for relief from removal. Petitioner claims that it would be futile to exhaust since the Immigration Court and the Board of Immigration Appeals ("BIA") have repeatedly ruled that aliens like he are subject to mandatory detention under § 236(c) of the INA, 8 U.S.C. § 1226(c). (Doc. 1, p. 4, ¶ 5.). Similar to our finding in the *McDonald* case, we find that Petitioner Dang is not subject to mandatory detention under § 236(c) of the INA, 8 U.S.C. § 1226(c), since he was not timely taken into ICE custody when he was released from his prison confinement on his Pennsylvania state court sentence.[5]

## II. Claims of Habeas Petition.

Petitioner's Habeas Petition and Traverse (Doc. 1, pp. 5-8 and Doc. 10, pp. 3-4) state his factual and procedural backgrounds, and they are supported by Respondents' Exhibits. We shall not detail the complete background with respect to Petitioner's present claim regarding his continued pre-final removal order detention by ICE at PCCF. As stated, Petitioner's claim is based on his contention that he is not subject to the mandatory detention provision of INA § 236(c) since he was not taken into custody by ICE when he was released from incarceration. Rather, Petitioner was taken into custody by ICE about nine years and nine months after he was released from incarceration, *i.e.* May 31, 2000 through February 9, 2010. Essentially, Petitioner is challenging his

---

[5]We note that the Supreme Court held mandatory detention under § 236(c) during removal proceedings is constitutionally permissible in *Demore v. Kim*, 538 U.S. 510 (2003). *See Motto v. Sobol*, 2010 WL 146315, *3 (M.D. Pa.); *Rodney v. Mukasey*, 340 Fed.Appx. 761, 763 (3d Cir. 2009). However, as discussed below, we find that Petitioner Dang is not subject to § 236(c).

continued detention at PCCF by ICE since February 9, 2010, and he states that his habeas action is brought since he is not subject to mandatory detention provisions of INA § 236(c), 8 U.S.C. § 1226(c). Thus, Petitioner contends that he is statutorily and constitutionally entitled to an individualized bond hearing. The record indicates that Petitioner had a hearing before the IJ scheduled for April 5, 2010, in his removal proceedings, and Petitioner states that he expects the IC removal proceedings to take up to twelve months.

Petitioner states that on February 22, 2010, he appeared before an IJ who informed him that he would be subject to mandatory detention provisions of INA § 236(c) throughout his removal proceedings. (Doc. 10, p. 6 and Doc. 9, Ex. 6). Petitioner also states, and Respondents' evidence shows, that he had a Master Calendar Hearing scheduled in his removal proceedings for April 5, 2010. (Doc. 10, p. 6 and Doc. 9, Ex. 7). There is no indication in the record if this April 5, 2010 hearing actually occurred and what transpired at this hearing. The record indicates that on February 22, 2010, the IJ refused Petitioner's request for a change in his custody status and found that he was subject to mandatory detention. (Doc. 9, Ex. 6). Petitioner indicates that it would be futile to either appeal the IJ's February 22, 2010 Order or to request the IJ to hold an individualized bond hearing in his case in light of BIA precedent . (Doc. 10, pp. 8-9). Petitioner estimates that he will be kept in ICE custody and subject to mandatory detention provisions of INA § 236(c) for about six to twelve months while his requests for relief from removal are pending. (*Id.*, p. 6).

Petitioner states, and Respondents' evidence, Notice to Appear ("NTA"), shows, as follows with respect to Petitioner:

1. You are not a citizen or national of the United States.
2. You are a native of VIETNAM and a citizen of VIETNAM.

3.      You were admitted to the United States at PHILADELPHIA, PA
on or about September 30, 1996 as a RE8 [lawful permanent resident].
4.      You were, on April 2, 1998, convicted in the Municipal Court of
Philadelphia PA for the offense of Carrying Firearms in a Public Place,
in violation of 18 [Pa. C.S.A. §] 6108.
5.      You were, on May 5, 1999, convicted in the Court of Common
Pleas of Philadelphia, PA for the offense of Attempted Theft by Unlawful
Taking, committed on or about November 13, 1998, in violation of
18 [Pa. C.S.A. §] 3304.
6.      For that offense, a sentence of one year or longer may be imposed.

(Doc. 9, Ex. 1).[6]

It is not clear from the current record if Petitioner was released for state confinement on May 31, 2000, as he claims (Doc. 1, p. 8, ¶ 16.  and Doc. 10, p. 5), or if he was sentenced to 12 months confinement on May 31, 2000 (and hence released on May 31, 2001).  Respondents' evidence seems to indicate that on May 31, 2000, Petitioner was sentenced to prison for violating the terms of his probation from his sentence for his 1998 firearms conviction by being convicted of his second offense (attempted theft) on May 5, 1999.  (Doc. 9, Ex. 2, pp. 2-3 and Ex. 8).  In their Brief (Doc. 9, p. 3), Respondents simply state that "in 2000 [Petitioner] Dang was ordered to serve a period of imprisonment after violating his probation."   Regardless of when Petitioner was released from confinement, *i.e.* either May 31, 2000 or May 31, 2001, it is not disputed that Petitioner was not taken into ICE custody until February 9, 2010, when he appeared at the ICE field office in Philadelphia, Pennsylvania, to inquire about his pending N-400 Application for Citizenship.  (Doc. 9, Ex. 2, p. 2).   For present purposes, we use the May 31, 2000 release from confinement date which Petitioner repeatedly uses.

---

[6]*See also* Doc. 9, Exs. 2, 3 and 4  for Petitioner's state court criminal record.

Petitioner does not dispute that his Philadelphia, Pennsylvania, carrying a firearm and attempted theft convictions render him removable under § 237(a)(2)(C) and § 237(a)(2)(A)(i) of the INA, as charged in the NTA. (Doc. 9, Ex. 1, p. 3). However, he states that he is eligible for relief from removal through his request for waiver of removal under § 212(h) of the INA after he adjusts his status under §245(a) of the INA based on the approval of his wife's I-130 application. (Doc. 10, p. 6). Petitioner seemingly now has had his initial IJ hearing in his removal proceedings, which was scheduled for April 5, 2010, about two months after he was taken into custody by ICE, *i.e.* February 9, 2010. Thus, it is undisputed that Petitioner is not yet subject to a final order of removal. Also, it appears that Petitioner has filed a request for a change in custody status with the IJ, and that the IJ denied his request on February 22, 2010, since the IJ found that he was subject to the mandatory detention provision of the INA. (Doc. 10, p. 8 and Doc. 1, p. 9 and Doc. 9, Ex. 6). Petitioner also indicates that it would be futile to appeal the IJ's Order to the BIA since the BIA will has consistently relied upon the decision of *Matter of Rojas* to deny aliens such as himself an individualized bond hearing. Petitioner also claims that § 236(c) of the INA and its mandatory detention provision only applies to an alien who is taken into custody by ICE at the time that he has been released from custody with respect to his underlying removable offense. Petitioner argues that the mandatory detention provision of INA § 236(c) does not apply to him because he was not detained by ICE at the time he was released from criminal custody, but rather, almost ten years later while he was checking on the status of his pending N-400 Application for Naturalization on February 9, 2010. In fact, Petitioner seems to indicate that at various times much earlier than February 9, 2010 he was available to ICE with respect to his other applications he submitted with ICE, in which his criminal

history was revealed, and that despite his prior availability, ICE waited almost ten years to take him not custody.  (*See e.g.* Doc. 1, p. 9, n. 1, regarding Petitioner's 2006 I-90 Application with ICE).

## III.  Discussion.

At the outset, based on *Thomas v. Hogan*, 2008 WL 4793739, *3 (M.D. Pa.), we agree with Petitioner that this Court has jurisdiction to decide his Habeas Petition.  In *Thomas*, the Court stated:

> It is well-established that district courts retain jurisdiction to consider an alien's habeas challenge to the statutory framework mandating his detention during removal proceedings. *See* 28 U.S.C. § 2241(c)(3) (noting that the writ of habeas corpus may extend to those held in custody in violation of the constitution "or laws or treaties of the United States"); *Demore v. Kim,* 538 U.S. 510, 517, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003) (finding that the INA does not bar habeas review of statutory or constitutional challenges to detention).

*Id*.  *See also Madrane v. Hogan*, 2007 WL 3145956, * 12 - * 13 (M.D. Pa.), 520 F. Supp. 2d 654 (M.D. Pa. 2007).

The *Thomas* case is not directly on point with Petitioner Dang's case since the *Thomas* Court held its Petitioner's latest release date from criminal incarceration was in 1998, prior to the effective date of §236(c) of the INA.  Thus, the *Thomas* Court held that Petitioner Thomas was not subject to the mandatory detention provision.[7]

As stated, Petitioner Dang's latest release date was in May 2000 (or May 2001), after the effective date of §236(c).  Thus, § 236(c) of the INA applies to Petitioner Dang.  The issue is whether Petitioner Dang is subject to the mandatory detention provisions § 236(c) since he was not taken

---

[7]The *Thomas* Court stated that "the date of release from the offense for which the individual is found removable determines whether the individual is entitled to an individualized bond hearing or subject to the mandatory detention provision."  2008 WL 4793739, *3(citations omitted).

into ICE custody when he was released from prison.

In *Motto*, 2010, WL 146315, *3, the Court stated:

> The apprehension and detention of aliens, pending removal decisions, are governed by the provisions by § 236 of the INA, 8 U.S.C. § 1226. Under § 1226(a), the Attorney General may issue a warrant for arrest and detention of an alien, pending a decision on whether the alien is to be removed from the United States. Although § 1226(a) permits discretionary (1) states that "The Attorney General shall take into custody any alien who ... (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title." 8 U.S.C. § 1226(c)(1).

*See also*, *Thomas v. Hogan*, 2008 WL 4793739, *1-*2; *Donaldson v. Donate*, 2009 WL 5179539, *2 (M.D. Pa.).

There is no dispute that Petitioner Dang completed his Pennsylvania criminal sentence based on a conviction which constitutes a removable offense and that ICE did not take him into custody immediately upon, or within a reasonable time after, his release from criminal incarceration. Nonetheless, ICE and the IJ have determined that Petitioner is subject to mandatory detention under § 236(c) without being eligible for an individualized bond hearing.   Also, there is no dispute that Petitioner is not yet subject to a final removal order and that he has pending with the IC applications for waiver of removal which may take up to twelve months to decide.  Petitioner also states that if an appeal of the IC's decision is made to the BIA with respect to a ruling on his requests for waiver of removal, his detention could be even longer than 12 months.   Thus, it appears as though Petitioner Dang will be subject to prolonged mandatory detention under §236(c) since it appears as though he just recently had his first master calendar hearing before the IJ in his removal proceedings (*i.e.* April 5, 2010), despite the fact that there has been no determination that he is

unlikely to appear for his removal proceedings.[8]

The clear language of § 236(c) states that an alien is subject to mandatory detention "when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation .... ." *See Cox v. Monica*, 2007 WL 1804335, *1 (M.D. Pa.).

Petitioner states that since he was not immediately detained by ICE when he was first released from criminal custody with respect to his PA State sentence, and since ICE had waited for almost ten years to detain him, the mandatory detention provision is no longer applicable to him.

Neither Petitioner nor Respondents cite to any legal support directly on point from the Third Circuit.[9] Petitioner cites to a recent First Circuit case, namely *Saysana v. Gillen*, 590 F. 3d 7, 16-17 (1st Cir. 2009). (Doc. 10, p. 8). In *Saysana,* the Court held that "the Government's effort to make §1226(c)(1) [§236(c)] 'ambiguous' is strained." *Id*. at 15. The *Saysana* Court stated, "[w]e have concluded that the text of the statute [§236(c)] is clear. Consequently, because the "when released" language is unambiguous, there is nothing for the agency to interpret-no gap for it to fill-and there is no justification for resorting to agency interpretation to address an ambiguity." *Id*. at 16.

---

[8]In fact, it appears from the record that Petitioner Dang is very likely to appear for his removal proceedings based on the various other applications he has filed over the years with ICE and the fact that he appeared to have cooperated with ICE with respect to these applications. Also, Petitioner is a lawful permanent resident of several years, and he is married to an American citizen and works as a nail technician. (Doc. 10, p. 5).

[9]Petitioner cites to various District Court cases, including the *Thomas v. Hogan*, 2008 WL 4793739 case from the Middle District of Pennsylvania. He does not cite to any Third Circuit Court or Middle District of Pennsylvania District Court decisions directly on point. (Doc. 10, pp. 2-3, pp. 7-8). None of the cases cited to by Petitioner are controlling on this Court. We have not found any Third Circuit cases directly on point with the present case. However, we find the cases cited to by Petitioner to be persuasive.

We find the *Saysana* case persuasive and since we agree with *Saysana* that the text of §236(c) is clear and that the "when released" language is unambiguous this Court is not required, as Respondents suggest it is (Doc. 9, p. 11), to give *Chevron* deference[10] to the BIA's interpretation of this section as stated in *Matter of Rojas*.

As stated, Petitioner has fully served his Philadelphia, Pennsylvania, sentences, and he indicates that he was physically released from criminal custody with respect to his parole violation sentence on May 31, 2000, *i.e.* for his removable offense. (Doc. 10, p. 5). Petitioner states that almost ten years elapsed between his release from criminal custody and his detention without bond

---

[10]*See Chevron USA, Inc., Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

In *Sulayao v. Shanahan*, 2009 WL 3003188, *3-*4 (S.D. N.Y.), the Court stated:

> Under the two-step analysis set forth in *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837 (1984), this Court must first determine whether section 1226(c) is ambiguous. If it is unambiguous, then Congress's clearly expressed intent is binding upon this Court and the BIA. *Id.* at 842-43. If, however, section 1226(c) is ambiguous, this Court must proceed to the second step of the *Chevron* analysis, and determine whether the BIA's interpretation is permissible. *Id.* at 843.
> "Statutory analysis begins with the plain meaning of a statute." *Natural Res. Def. Council, Inc. v. Muszynski,* 268 F.3d 91, 98 (2d Cir.2001). Words should be given their "ordinary sense." *Id.* "[T]he meaning of statutory language, plain or not, depends on context." *Bailey v. United States,* 516 U.S. 137, 145 (1995) (quotation marks omitted) (alteration in original). A statute is ambiguous if it is susceptible to two or more reasonable interpretations. *Muszynski,* 268 F.3d at 98. "when determining which reasonable meaning should prevail, the text should be placed in the context of the entire statutory structure." *Id.*

The *Sulayao* Court found that exhaustion was futile, that § 236(c) was ambiguous, and that the BIA's interpretation of § 236(c) as set forth in *Matter of Rojas* was permissible. We disagree with the *Sulayao* Court and agree with the *Saysana* Court, and find that the language of § 236(c) is unambiguous.

by ICE.  (Doc. 3, p. 2).

As relief, Petitioner requests that this Court order Respondents to release him on his own recognizance, or in the alternative, to give him an individualized bond hearing before an IJ.  (Doc. 10, p. 2).

Petitioner states that when he was released from criminal custody on May 31, 2000, ICE failed to timely detain him.  Due to Petitioner's stated Pennsylvania convictions, ICE commenced removal proceedings against Petitioner by filing a Notice to Appear ("NTA") on February 9, 2010. (Doc. 9, Ex. 1).  Also, Petitioner was taken into custody by ICE on February 9, 2010, which Petitioner states was almost ten years after he fully served his state criminal sentence.  Petitioner had his first appearance before an IJ on February 22, 2010, and his request for a change in custody status and an individualized bond hearing was denied since the IJ found that Petitioner was subject to the mandatory detention provision of § 236(c).  (Doc. 9, Ex. 6).  Petitioner had a Master Calendar hearing scheduled before the IJ with respect to his removal proceedings for April 5, 2010.  (Id., Ex. 7).  As stated, pursuant to Petitioner's request, we give his present Habeas Petition expedited consideration, and we will recommend that he be afforded an individualized bond hearing with the IJ within thirty (30) days.

Petitioner states that despite the fact that  he was released from criminal confinement  on May 31, 2000, which concluded his criminal case and constituted his release from his removal offenses, he was not taken into ICE custody until almost  ten years later (actually nine years and nine months later) on February 9, 2010.  Petitioner was then detained by ICE at PCCF without bond, and he has remained there for almost three (3) months to the present date.  Petitioner states that he

made a request for an individualized bond hearing, *via* a request for a change in custody status, and that the IJ denied it on February 22, 2010, pursuant to the mandatory detention provisions of §236(c) of the INA, based on Petitioner's conviction and BIA precedent. (Doc. 9, Ex. 6). Petitioner had a hearing scheduled before an IJ on April 5, 2010, with respect to his removal proceedings, and it appears as though Petitioner remains in ICE custody confined at PCCF subject to the mandatory detention provisions of § 236(c) of the INA. Thus, Petitioner has filed the present Habeas Petition to raise his argument as to why he believes he is not subject to the mandatory detention provision of § 236(c) of the INA, and why he should either be released on his own recognizance or should be allowed to have an individualized bond hearing.

The Petitioner in the *Cox* case made an argument that the mandatory detention provisions of § 236(c) of the INA did not retroactively apply to him because he was released from criminal custody on the conduct subjecting him to removal in January 1998, before the effective date of § 236(c). The Petitioner in *Thomas* made a similar argument to Petitioner Cox. Petitioner Dang argues that even though he was released from criminal custody after the effective date of § 236(c), since he was released from criminal custody on the conduct subjecting him to removal in May 2000 and since ICE did not immediately detain him at this time and waited for almost ten years (actually nine years and nine months) until February 9, 2010, the mandatory detention provisions of § 236(c) of the INA do not apply to him. Thus, our Petitioner readily admits that he was released from criminal custody in 2000, after the effective date of § 236(c) in 1998. However, Petitioner states that he was not timely detained by ICE when he was released from criminal custody as required by § 236(c). Thus, Petitioner Dang claims that since ICE did not detain him for nine years and nine

months after his release with respect to his Pennsylvania state offenses, he is no longer subject to the mandatory detention provisions of § 236(c) of the INA. We agree with Petitioner Dang.

As the *Cox* Court indicated, some courts in other districts have found that a Petitioner who was released from state custody and was not taken into immigration custody until three (3) or more years later, is not subject to the mandatory detention provisions of § 236(c) of the INA. 2007 WL 1804335, * 4. The *Cox* Court cited to *"Quezada-Bucio v. Ridge,* 317 F. Supp.2d 1221, (W.D. Wash.2004) (finding that petitioner who was released from state custody and was not taken into immigration custody until three years later was not subject to mandatory detention under INA § 236(c)); *Pastor-Camarena,* 977 F. Supp. at 1415 (holding that the plain meaning of the statute indicates that INA § 236(c) applies to aliens immediately after release from custody, and not to aliens released many years earlier); *see also Boonkue v. Ridge,* 2004 WL 1146525 (D.Or. May 7, 2004); *Alikhani v. Fasano,* 70 F.Supp.2d 1124 (S.D.Cal.1999)." *Id.* As stated, our Petitioner was released from state custody nine years and nine months before ICE took him into custody.

We have not found in our research any Third Circuit Court case directly on point with the present case.[11] Nor have the parties cited to any Third Circuit Court case directly on point with the present case.

Petitioner also cites to an Eastern District of Virginia District Court case of December 19, 2007, *Waffi v. Loiselle*, 527 F. Supp. 2d 480 (E. D. Va. 2007). *See also Al-Bassrei v. Clark*, 2006 WL 2691394 (W.D. Wash.)(Petitioner claimed that he was not subject to mandatory detention under

---

[11]While our R&R in the *McDonald* case was directly on point with the Petitioner Dang's case, as stated, this R&R was not adopted by the District Court.

§ 236(c) because he was not taken into immigration custody until 19 years after he was released from state custody on his criminal offense); *Bromfield v. Clark*, 2007 WL 527511 (W. D. Wash)(court found that "Congress intended mandatory detention to apply only to those aliens taken into immigration custody immediately after their release from state custody.").[12]  *See also Zabadi v. Chertoff*, 2005 WL 3157377, * 5  (N.D. Cal.) (court held that "[DHS] does not have to act immediately but has reasonable period of time after [alien's] release from incarceration in which to detain [under §236(c)]."  Court found that government's wait of more than two years to detain alien under § 236(c) after release from custody was unreasonable).

As mentioned, Petitioner Dang filed his Habeas Petition with this Court on March 1, 2010, prior to his April 5, 2010 removal proceedings hearing before an IJ.  Petitioner did not exhaust his administrative remedies by filing an appeal with the BIA regarding the IJ's February 22, 2010 Order denying his  request for a change in custody.

Further, it is clear that Petitioner's removal proceedings are still pending and that no final removal order has been entered in his case to date.

Thus, since Petitioner Dang's removal proceedings are pending and he is not the subject of a final order of removal, he is a pre-final order detainee.  As stated, while Petitioner was  scheduled for a "Hearing in Removal Proceedings" before an IJ on April 5, 2010 (Doc. 9, Ex. 7), there is nothing in the current record as to what transpired at this hearing.

---

[12]It does not appear from our research that the Third Circuit has decided the merits of Petitioner Dang's claim presented in this case.  *See Waffi*, 527 F. Supp. 2d at 487.

As relief in the present habeas case, Petitioner requests that this Court direct Respondents to release him on his own recognizance or to immediately give him an individualized bond hearing.

We agree with Petitioner Dang that the instant Habeas Petition should not be dismissed for his failure to have exhausted his administrative remedies regarding his present request for a bond hearing. (Doc. 10, pp. 8-9). It is clear that while Petitioner did not file an appeal with the BIA of the IJ's February 22, 2010 Order denying his request for a change in custody status, it would be futile to do so. A review of the instant Petition also reveals that Petitioner Dang does not have a final order of removal in this case. Rather, he challenges his continued pre-final order detention by ICE since February 9, 2009 without bond, and he seeks his release on ROR or, alternatively, an immediate bond hearing.

*A. Exhaustion of BOP Administrative Remedies*

Petitioner has not exhausted his administrative remedies with respect to his present habeas claim and his challenge to ICE's continued mandatory detention of him, and his denial of his request for an individualized bond hearing by the IJ. Petitioner admits his failure to exhaust, but he states that exhaustion of administrative remedies would be futile since the BIA has ruled that § 236(c) mandates his detention without bond. (Doc. 10, pp. 8-9).

Generally, a writ of habeas corpus will not issue if the Petitioner has not exhausted his administrative remedies. *See Moscato v. Federal Bureau of Prisons*, 98 F.3d 757 (3d Cir. 1996) (It is well-settled that before a prisoner can bring a habeas petition under 28 U.S.C. § 2241, administrative remedies must be exhausted). If a prisoner does not exhaust available remedies, the petition should be dismissed. *Arias v. United States Parole Commission*, 648 F.2d 196, 199 (3d Cir.

1981); *Mayberry v. Pettiford*, 2003 WL 21635306 (5th Cir.); and *Lindsay v. Williamson*, Civil No. 07-808, M.D. Pa., (7-26-07 Memo, J. Caldwell), slip op. p. 4.

However, based on the Court's decision in *Cox v. Monica*, 2007 WL 1804335 (M.D. Pa.), we find that exhaustion is not required in our case since Petitioner is not appealing a final order of removal. Further, as the *Cox* Court held, even if exhaustion were required, it would be futile in this case, as Petitioner Dang contends. The *Cox* Court stated as follows:

> Under the immigration laws, exhaustion of administrative remedies is statutorily required only on appeals of final orders of removal, 8 U.S.C. § 1252(d)(1). Exhaustion is not required when a petitioner challenges decisions concerning bond, as is the case here. *Rowe v. Immigration & Naturalization Serv.,* No. Civ. A. 98-11511-GAO, 1999 WL 289362, at * 2 (D.Mass. Apr. 30, 1999); *Pastor-Camarena v. Smith*, 977 F.Supp. 1415, 1417 (W.D. Wash. 1997) (finding no exhaustion requirement in a pre-deportation challenge to bond denial); *Montero v. Cobb*, 937 F.Supp. 88, 91 (D.Mass. 1996) (stating that there is no federal statute that imposes an exhaustion requirement on aliens taken into custody pending their removal).

> However, even if the court were to conclude that exhaustion was required, in light of the fact that exhaustion of administrative remedies is considered futile where the administrative body has predetermined the issue before it, *see McCarthy v. Madigan*, 503 U.S. 140, 148, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992), and all indications are that the BIA has done just that, the court would opt to excuse exhaustion and consider the matter.

2007 WL 1804335, * 3; *Matthias v. Hogan*, 2008 WL 913522, *4-*5 (M.D. Pa.).

Thus, we find that Petitioner Dang is not required to exhaust his administrative remedies with respect to his request for an individualized bond hearing. We also find futility of exhaustion, since, as stated, the BIA has precedent against Petitioner and the BIA has clearly indicated how it interprets §236(c). *See Matter of Rojas*, 23 I. & N. Dec. 117, 127 (B.I.A. 2001). Thus, we shall not recommend

that Petitioner's Habeas Petition be dismissed for failure to exhaust his administrative remedies.

B. *Petitioner Dang's Mandatory Detention under § 236(c) of the INA*

Petitioner contends that he is not subject to mandatory detention under § 236(c) of the INA since he was not immediately taken into ICE custody when he was released from state custody in May 2000, and since ICE waited nine years and nine months to detain him after he was released. Also, Petitioner indicates that he was readily available to ICE for years before February 2010 when he filed various applications with ICE regarding his requests for permission to remain in the United States. Petitioner's removal case is still pending. Further, after being taken into ICE custody on February 9, 2010, Petitioner has now been detained for almost three months. Petitioner had an IJ hearing scheduled on April 5, 2010, with respect to his removal proceedings, and he has filed a request for a change in custody with the IJ which was denied on February 22, 2010. The IJ found that Petitioner was subject to the mandatory detention provision of § 236(c). While Petitioner could have made a request for an individualized bond hearing at his April 5, 2010 IJ hearing, we find that it would have been futile to do so since it appears, based on the IJ's February 22, 2010 Order, that the IJ would also deny this request and would again rule that Petitioner was subject to mandatory detention pursuant to § 236(c) of the INA based on well settled BIA precedent. Unlike Petitioners in *Cox and Thomas*, Petitioner Dang does not claim that § 236(c) of the INA is inapplicable to him because his state convictions occurred before the effective date of the IIRIRA (*i.e.* his convictions were in 1998 and 1999 (Doc. 9, Ex. 1), and IIRIRA's effective date was October 9, 1998).[13]

---

[13]The *Cox* Court stated, "On October 9, 1998, the TPCR's [Transition Period Custody Rules] expired and INA § 236(c), 8 U.S.C. § 1226(c), became effective, providing for the mandatory detention of certain criminal aliens . . ." 2007 WL 1804335, * 1.

Petitioner Dang has stated the provisions of § 236(c) of the INA (Doc. 10, pp.9-10).  The

Court stated in *Cox*, 2007 WL 1804335, * 1, as follows:

INA §236(c) provides "for the mandatory detention of certain criminal aliens as follows:"

(c) Detention of criminal aliens

(1) Custody

The Attorney General shall take into custody any alien who-

(A) is inadmissible by reason of having committed any
offense covered in section 1182(a)(2) of this title,
(B) is deportable by reason of having committed any
offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or
(D) of this title,

(C) is deportable under section 1227(a)(2)(A)(i) of this title
on the basis of an offense for which the alien has been
sentence[d] to a term of imprisonment of at least 1 year, or

(D) is inadmissible under section 1182(a)(3)(B) of this title or
deportable under section 1227(a)(4)(B) of this title, **when the
alien is released**, without regard to whether the alien
is released on parole, supervised release, or probation, and
without regard to whether the alien may be arrested or
imprisoned again for the same offense.

(Emphasis added).  *See also Weir v. Sabol*, 2010 WL 1526392, *4 (M.D. Pa.).

As an alien in removal proceedings who has been convicted of an offense covered in

§ 237(a)(2)(C) and § 237(a)(2)(A)(i) (Doc. 9, Ex. 1, p. 3), and who has been released following service

of the underlying state sentence, Petitioner Dang appears to be subject to mandatory detention

pursuant to § 236(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(c).  *See Alli v.*

*Decker*, 644 F. Supp. 2d 535, 538 (M.D. Pa.).  Since Petitioner Dang was released  from criminal

custody in May 2000, after the stated statute took effect, §236(c) may apply to him even though his state convictions occurred in 1998 and 1999.

According to the *Cox* case, § 236(c) "does not retroactively apply to aliens who were released from custody prior to its effective date." 2007 WL 1804335, * 5. *See also Thomas, supra*. In *Cox*, the Petitioner was released from criminal custody with respect to the offense which subjected him to removal in January 1998, which was before the effective date of §236(c). 2007 WL 1804335, * 3. The *Cox* Court found that since its Petitioner was released from custody prior to § 236(c) effective date, its Petitioner was not subject to mandatory detention, and he was entitled to an individualized bond hearing. 2007 WL 1804335, * 5; *See also Thomas, supra*.

In our case, Petitioner Dang was charged with being removable based on his 1998 and 1999 Pennsylvania convictions. Petitioner Dang was released from custody on his state conviction on May 31, 2000, and he was not placed into ICE custody until many years later on February 9, 2010. We find that, based on *Cox*, the date of an alien's release from criminal custody on the conduct subjecting him to removal determines whether § 236(c) applies. In our case, it is clear that Petitioner Dang's release from custody on the offenses which subjected Petitioner to removal proceedings (*i.e.* May 2000) was well after the effective date of § 236(c) (*i.e.* October 9, 1998). Thus, based on *Cox*, we find that Petitioner Dang may be subject to mandatory detention under § 236(c) since his release date on his state sentence was after the effective date of § 236(c), notwithstanding the fact that his offenses were committed in 1998 and 1999, since he was released from criminal custody on May 31, 2009. The statutory provision of § 236(c) may apply to our Petitioner, and he may be subject to mandatory detention under it. However, the issue that Petitioner Dang presents is whether the

plain meaning of the statute provides that § 236(c) only applies to aliens immediately after release from custody, and not to aliens released many months or years (*i.e.* nine years and nine months) earlier.

Specifically, Petitioner argues:

> By its plain terms, section 1226(c) does not apply to Mr. Dang because he was not taken into immigration custody "when . . . released" from incarceration. Instead, on May 21 [31], 2000, Mr. Dang was released back into his community. For almost ten years he worked and lived in the community without incident, became the primary breadwinner and center of his family, married, and brought his son to this country, so that he would have access to better opportunity. It was not until February 9, 2010 that ICE finally took him into immigration custody. Mr. Dang, therefore, is not "an alien described in paragraph (1)" of the statute, and is not subject to mandatory detention under paragraph (2). Instead, his detention is governed by 8 U.S.C. § 1226(a).

(Doc. 10, p. 10).

The parties dispute whether § 236(c) is ambiguous or not. (Doc. 10, p. 11 and Doc. 9, p.9). If it is found to be ambiguous, then the parties agree that deference is due to the BIA's interpretation of §236(c) as stated in *Matter of Rojas* if it is reasonable based on the *Chevron* standard.

Based on *Bromfield* and *Waffi*, as well as *Oscar v. Gillen*, 595 F. Supp. 2d 166, 169 (D. Mass. 2009)(Court found that government's interpretation of §236(c) as applying "any time after the alien is released," "perverts the plain language of the statute") and *Scarlett v. ICE*, 632 F. Supp. 2d 214 (W.D. N.Y. 2009), we find that Petitioner Dang is entitled to an individual bond hearing since he was not taken into immigration custody immediately after his release from state custody or within a reasonable time after his release from incarceration. Also, it appears that ICE was able to take Petitioner Dang into custody long before February 2010, *i.e.* during the proceedings with respect

to the various other applications Petitioner filed with ICE throughout the years after his release from incarceration requesting permission to remain in the United States. Rather than taking Petitioner Dang into custody within a reasonable time after either his release from incarceration or when he appears to have been available to ICE, he was taken into immigration custody nine years and nine months after his release from state custody. Based on the facts of Petitioner Dang's case, we find that the plain meaning of § 236(c) does not apply to Petitioner Dang since he was undisputedly not taken into ICE custody when he was released from state confinement or within a reasonable time after his release from confinement, but rather, nine years and nine months later.

In *Scarlett v. ICE*, 632 F. Supp. 2d at 219-220, the Court found *Oscar* and *Waffi*, as well as *Bromfield* and *Quezada-Bucio* as persuasive, and held that Petitioner Scarlett's detention was not authorized under §236(c) "because Petitioner was released from incarceration nearly eighteen months prior to his immigration detention. The *Scarlett* Court stated that, "[i]nstead, Petitioner's detention was authorized by 8 U.S.C. § 1226(a), which affords Petitioner the opportunity for an individualized bond hearing before an immigration judge." *Id.* (Citations omitted).

In *Bromfield,* the Court stated:

> The phrase "when the alien is released" has been the subject of statutory interpretation in several previous cases, including two published decisions by this Court. *See Quezada-Bucio*, 317 F.Supp.2d at 1228; *Pastor-Camarena v. Smith*, 977 F.Supp. at 1415; *see also Boonkue v. Ridge*, 2004 WL 1146525 (D.Or. 2004); *Alikhani v. Fasano*, 70 F.Supp.2d 1124 (S.D. Cal. 1999); *Alwady v. Beebe*, 43 F.Supp.2d 1130 (D.Or. 1999); *Velasquez v. Reno*, 37 F.Supp.2d 663 (D.N.J. 1999); *Tenrreiro v. Ashcroft*, 2004 WL 1354277, *vacated and transferred*, 2004 WL 1588217 (D.Or.2004). In *Quezada-Bucio*, this Court determined that "the mandatory detention statute, INA § 236(c), does

not apply to aliens who have been taken into immigration custody several months or several years after they have been released from state custody." *Quezada-Bucio*, 317 F.Supp.2d at 1231 (finding that petitioner who was released from state custody and was not taken into immigration custody until three years later was not subject to mandatory detention under INA § 236(c)); *see also Pastor-Camarena*, 977 F.Supp. at 1417 ( holding that the plain meaning of the statute indicates that INA § 236(c) applies to aliens immediately after release from custody, and not to aliens released many years earlier). As the Court previously explained, 'the clear language of the statute indicates that the mandatory detention of aliens 'when' they are released requires that they be detained at the time of release. *Alikhani*, 70 F.Supp.2d at 1130 . . . [If] Congress had intended for mandatory detention to apply to aliens at any time after they were released, it could easily have used the language *'after* the alien is released," 'regardless of when the alien is released,' or other words to that effect. Instead Congress chose to use the word 'when,' which connotes a much different meaning.

*Quezada-Bucio*, 317 F.Supp.2d at 1230. The Court finds, as in *Quezado-Bucio*, that Congress intended mandatory detention to apply only to those aliens taken into immigration custody immediately after their release from state custody. *Id*.

The Court also disagrees with respondents that the BIA's decision in *IN re Rojas*, 23 I & N Dec. 117 (BIA 2001), and its progeny should be accorded deference. The United States Supreme Court has held that the federal courts should defer to an agency decision only if the statute, "applying the normal 'tools of statutory construction,' [is] ambiguous." *INS v. St. Cyr*, 533 U.S. 289, 320 n. 45, 121 S.Ct. 2271, 150 L.Ed.2d 347 (201) (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). As determined above, the plain language of Section 236(c) is not ambiguous.

> Accordingly, the Court agrees with petitioner that mandatory detention is not authorized in petitioner's case by Section 236(c) because he was not taken into immigration custody when he was released from state custody as required by the express language of the statute. *Quezada-Bucio*, 317 F.Supp.2d at 1231; *Pastor-Camarena*, 977 F.Supp. at 1417. The Court also agrees that petitioner is entitled to an individualized bond hearing pursuant to the general release terms of INA § 236(a).

2007 WL 527511, *4-*5.

In *Waffi*, the Court stated:

> In *Pastor-Camarena v. Smith*, the district court examined the phrase "when the alien is released" in the context of a so-called "transition rule" case. 977 F. Supp. 1415, 1417-18 (W.D. Wash. 1997), [FN5]. The court determined that the mandatory detention provision at section 303(b)3)(A) of the IIRIRA (now replaced by section 236(c)(1) of the INA) did not apply to aliens who had been taken into immigration custody years after they had been released from state custody. *Id.* at 1418 ("[I]t was arbitrary and capricious for respondents to interpret the language of IIRIRA § 303(b)(3) to include aliens, like petitioner, who were released from incarceration many years before coming into custody for deportation proceedings."). "The content and structure of the statute make it clear that the 'when the alien is released' language of IIRIRA, § 303(b)(3)(A), must apply to aliens *who are being released* from incarceration on the underlying offense." *Id.* at 1417 (emphasis added). In *Alikhani v. Fasano*, 70 F.Supp.2d 1124, 1130 (S.D. Cal. 1999), the strict court explained that because the term "when" is defined as "just after the moment that," it was clear that the mandatory detention language of section 236(c) applied only to those aliens detained in immigration custody "just after the moment that" they are released from state custody (citing Webster's Third New International Dictionary 2602 (3d ed. 1976)). The court went on to explain that if Congress had intended for section 236(c) to apply retroactively to those criminals

24

released before its effective date, it could have used "explicit retroactivity language or required that covered aliens be taken into custody *regardless of when the alien is released* or *at anytime after the alien is released.* *Id.* (internal quotations omitted) (emphasis added); *see also Velasquez*, 37 F.Supp.2d at 670-71. Similarly, in *Alwaday*, the district court opined that had Congress intended for section 236(c) to apply retroactively to criminals released from custody before its effective date, it could have used the phrases "regardless of when the alien is released" or "at any time after the alien is released." 433 F.Supp.2d at 1133. Although the prospective or retroactive application of section 236(c) of the INA is not before the Court, as the district court noted in *Quezada-Bucio v. Ridge*, the language used in the transitional rule "is exactly the same as that used in the permanent rule [*i.e.* section 236(c) of the INA]." 317 F.Supp.2d at 1230. "Thus, in accordance with the rules of statutory construction, the language in question should be interpreted the same way." *Id.* (citing *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988)). "That interpretation would follow the same logic as the Supreme Court's long-standing rule that identical words used in different parts of the statute must have the same meaning." *Id.* (citing *Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155, 203 n. 12, 113 S.Ct. 2549, 125 L.Ed.2d 128 (1993)).

> FN 5 Congress enacted the IIRIRA, Pub. L. No. 104-208, 110 Stat. 3009, on September 30, 1996. The act included "Transition Period Custody Rules," which suspended the operation of section 236(c)(1) from October 9, 1996 until October 9, 1998, after which time the permanent rule, codified at section 236(c0(1) of the INA, took effect. *See* IIRIRA §§ 3039a), 303(b)(3). The transitional rule at issue in *Pastor-Camarena* provides that the Attorney General "shall take into custody any alien [who has committed a specified criminal offense' when the alien is released, without regard to whether the alien may be

> arrested or imprisoned again for the same
> offense." IIRIRA § 303(b)(3)(A). The current
> version of section 236(c)(1) of the INA and
> the transitional rule at § 303(b)(3)(A) of the
> IIRIRA, however, contain the same clause
> "when the alien is released."

527 F. Supp. 2d at 487-88.

The *Waffi* Court further stated:

> The Court finds that petitioner's construction of section
> 236(c) is correct. The term "when" includes the
> characteristic of "immediacy," referring in its primary
> conjunctive sense, to action or activity occurring "at the
> time that" or "as soon as" other action has ceased or begun.
> *See* 20 The Oxford English Dictionary 209 (2d ed. 1989);
> The American Heritage Dictionary of the English Language
> (4th ed. 2000). The Court is not persuaded by respondents'
> argument that the term "when," as used in section 236(c),
> is ambiguous because it can "also be defined in a
> conditional sense, *i.e.*, 'in the event that,'" Resp. to Pet. For
> Writ of Habeas Corpus at 11. Such a construction appears
> more properly placed upon the term "whenever" or
> perhaps the phrase "in the event that," however, neither
> that term or that phrase is used in section 236(c).
> Additionally, it would be contrary to the plain language of
> section 236(c)'s command that the Attorney General take
> into immigration custody certain criminal aliens "when"
> those aliens are released from state custody to include those
> aliens who had "already" been released from state custody.
> *See Aguilar*, 50 F.Supp.2d at 544. Moreover, statutory
> language should not be construed in a way that renders a
> term surplusage. *Quezada-Bucio*, 317 F.Supp.2d at 1228
> (citing *United States v. Menasche*, 348 U.S. 528, 75 S.Ct.
> 513, 99 L.Ed. 615 (1955)). If this Court were to agree with
> the BIA that the clause "when the alien is released" does
> not describe the class of aliens who are to be detained by
> the Attorney General, it would doom that clause to
> removable surplusage. When the BIA argues that section
> 236(c)(1) could be read simply as requiring the Attorney

General to take into immigration custody any alien [meeting any one of the requirements at § 236(c)(1)(A)(D)] without regard to the timing of that aliens' release from custody, 23 I. & N. Dec. at 121, the phrase "when the alien is released" is rendered a nullity. Therefore, the Court rejects the BIA's construction of the phrase.

*Id*. at 488.

The *Waffi* Court concluded:

[T]he Court finds that the mandatory detention statute, section 236(c)(1) of the INA, does not apply to an alien such as petitioner, who has been taken into immigration custody well over a month after his release from state custody. The Court finds further that petitioner should be provided with an individualized bond hearing, pursuant to section 236(a) of the INA. Accordingly, the petition for a writ of habeas corpus will be granted in part, and this matter will be remanded to the United States Immigration Court in Arlington, Virginia for the purpose of providing petitioner with an individualized bond hearing within thirty days of the date of this Order. The Immigration Judge will be ordered to determine whether, and under what conditions, petitioner may be released from custody during the pendency of his removal proceedings.

*Id*. at 488.

Petitioner Dang has been in ICE's pre-final order detention since February 9, 2010, and his request to change his status was denied by an IJ on February 22, 2010. Further, Petitioner Dang was taken into ICE custody nine years and nine months after he was released from state custody, which was many years after his release, as in the *Quezada-Bucio* and *Pastor-Camarena* cases. *See Cox, supra* at *4; *Scarlett, supra* (18 months).

We find that Petitioner Dang should also be given an individualized bond hearing. The IJ should give Petitioner a bond hearing, since we agree with Petitioner and his present argument that the plain meaning of the statute provides that §236(c) only applies to aliens immediately after release from custody or within a reasonable time after release from incarceration, and not to aliens released nine years and nine months earlier. We find that Petitioner Dang's Habeas Petition should be granted, in part, to the extent that he should be afforded an individual bond hearing. We find that Petitioner should be afforded an individualized bond hearing within thirty (30) days.

Petitioner Dang's removal proceedings have been expeditious to date, in that he was detained by ICE on February 9, 2010, and he had a hearing in his removal proceedings scheduled for April 5, 2010 (about 2 months later), and he has only been mandatorily detained under § 236(c) for almost three months. However, we agree with Petitioner Dang that since he was not taken into ICE custody soon (or within a reasonable period of time) after his release from state custody, *i.e.* nine years and nine months lapsed, § 236(c) does not apply to him, and he should be given an individualized bond hearing. We find that the Court should direct the IJ to give Petitioner an individualized bond hearing within thirty (30) days.

## III. Recommendation.

Based on the foregoing, it is respectfully recommended that Petitioner Dang's Petition for Writ of Habeas Corpus be granted to the extent that Petitioner should be given an individualized bond

hearing within thirty (30) days.  We also recommend that if the Court adopts this R&R, Petitioner's request for attorney's fee under the EAJA be granted since Petitioner will be the prevailing party within the meaning of EAJA.  *See Oscar v. Gillen, supra*.


**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: May 7, 2010**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Y VIET DANG, | : | CIVIL ACTION NO. **1:CV-10-0446** |
| | : | |
| Petitioner | : | (Judge Rambo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| CRAIG LOWE, et al., | : | |
| | : | |
| Respondents | : | |

## <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **May 7 2010.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof. Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections. The briefing
> requirements set forth in Local Rule 72.2 shall apply. A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge. The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                                     **s/ Thomas M. Blewitt**
                                                     **THOMAS M. BLEWITT**
                                                     **United States Magistrate Judge**

**Dated: May 7, 2010**